# Exhibit A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

| |
|---|
| FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
| **ENDORSED<br>FILED<br>ALAMEDA COUNTY**<br><br>SEP 20 2016<br><br>CLERK OF THE SUPERIOR COURT<br>By _____<br>Deputy |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

GALDERMA LABORATORIES, L.P., and DOES 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ANDREA GREENBERG, on behalf of herself and all others similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Alameda Superior Court<br><br>1225 Fallon Street<br>Oakland, CA 94612 | CASE NUMBER:<br>*(Número del Caso)* |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Howard Hirsch, Lexington Law Group, 503 Divisadero Street, San Francisco, CA 94117

| DATE:<br>*(Fecha)* 9-20-16 | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* Galderma Laboratories, L.P.

   under: [X] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*

4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov



## Superior Court of California, County of Alameda
## Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:

- Indicating your preference on Case Management Form CM-110;

- Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or

- Agree to ADR at your Initial Case Management Conference.

**QUESTIONS?** Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov
Or visit the court's website at http://www.alameda.courts.ca.gov/adr

### What Are The Advantages Of Using ADR?

- *Faster* – Litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control and flexibility* – Parties choose the ADR process appropriate for their case.

- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.

- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

### What Is The Disadvantage Of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

### What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o **Court Mediation Program**: Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

- o **Private Mediation**: This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

  - o **Judicial Arbitration Program** (non-binding): The judge can refer a case or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court. If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

  - o **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

### Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services. Contact the following organizations for more information:

**SEEDS Community Resolution Center**
1968 San Pablo Avenue, Berkeley, CA 94702-1612
Telephone: (510) 548-2377     Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – Services that Encourage Effective Dialogue and Solution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA 94550
Telephone: (925) 373-1035     Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA 94607
Telephone: (510) 768-3100     Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

**ALA ADR-001**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:  FAX NO. *(Optional)*: | |
| E-MAIL ADDRESS *(Optional)*: | |
| ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY

STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS | CASE NUMBER: |
|---|---|

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 1225 Fallon Street, Oakland, CA 94612.

1. Date complaint filed: _____. An **Initial Case Management Conference** is scheduled for:

   Date:                  Time:                  Department:

2. Counsel and all parties certify they have met and conferred and have selected the following ADR process *(check one)*:

   ☐ Court mediation        ☐ Judicial arbitration

   ☐ Private mediation      ☐ Private arbitration

3. All parties agree to complete ADR within 90 days and certify that:

   a. No party to the case has requested a complex civil litigation determination hearing;
   b. All parties have been served and intend to submit to the jurisdiction of the court;
   c. All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
   d. Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
   e. Case management statements are submitted with this stipulation;
   f. All parties will attend ADR conferences; and,
   g. The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____        ▶ _____
(TYPE OR PRINT NAME)                      (SIGNATURE OF PLAINTIFF)

Date:

_____        ▶ _____
(TYPE OR PRINT NAME)                      (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

Page 1 of 2

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS

Cal. Rules of Court,
rule 3.221(a)(4)

ALA ADR-001

| | |
|---|---|
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | CASE NUMBER.: |

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

1

LEXINGTON LAW GROUP
Howard Hirsch, State Bar No. 213209

2

Abigail Blodgett, State Bar No. 278813
503 Divisadero Street

3

San Francisco, CA 94117
Telephone: (415) 913-7800

4

Facsimile: (415) 759-4112
hhirsch@lexlawgroup.com

5

ablodgett@lexlawgroup.com

6

Attorneys for Plaintiff
ANDREA GREENBERG

7

**ENDORSED**
**FILED**
**ALAMEDA COUNTY**

SEP 20 2016

CLERK OF THE SUPERIOR COURT
By _____
                        Deputy

8

9

SUPERIOR COURT OF THE STATE OF CALIFORNIA

10

COUNTY OF ALAMEDA

11

12

13

ANDREA GREENBERG, on behalf of herself
and all others similarly situated,

14

Plaintiff,

15

vs.

16

17

GALDERMA LABORATORIES, L.P., and
DOES 1-100,

18

Defendants.

19

Case No.     RG 16831796

**AFFIDAVIT REGARDING PROPER
VENUE PURSUANT TO CAL. CIVIL
CODE § 1780(d)**

20

21

22

23

24

25

26

27

28

AFFIDAVIT RE: VENUE – GREENBERG V. GALDERMA LABORATORIES, L.P.

1   I, Howard Hirsch, declare as follows:

2       1.      I am an attorney with the Lexington Law Group, and I represent Plaintiff Andrea

3   Greenberg in the above-entitled action. This Affidavit is submitted concurrently with the filing of

4   the Complaint pursuant to, and in compliance with, California Civil Code § 1780(d).

5       2.      Venue for this action is proper in the County of Alameda because a substantial

6   portion of the transactions at issue in the Complaint took place, and are taking place in this

7   County.

8       3.      In particular, a substantial portion of the wrongful conduct at the heart of this case

9   – Defendant Galderma Laboratories, L.P.'s sales and marketing of skin care products that

10  prominently feature the words "Eczema Calming" and "Formulated for Eczema" on the principal

11  display panel – occurred in the County of Alameda and affected consumers in this County.

12      4.      Venue is therefore proper in the County of Alameda pursuant to California Civil

13  Code § 1780(d).

14

15          I declare under penalty of perjury under the laws of the State of California that the

16  foregoing is true and correct. Executed on September 20, 2016, at San Francisco, California.

17

18

19                              Howard Hirsch

20

21

22

23

24

25

26

27

28

-1-

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Howard Hirsch, SBN 213209<br>Lexington Law Group<br>503 Divisadero Street<br>San Francisco, CA 94117<br>TELEPHONE NO.: (415) 913-7800     FAX NO.:<br>ATTORNEY FOR (Name): Center for Environmental Health | FOR COURT USE ONLY<br><br>**ENDORSED**<br>**FILED**<br>**ALAMEDA COUNTY**<br><br>SEP 20 2016<br><br>CLERK OF THE SUPERIOR COURT<br>By _____ Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson Courthouse

CASE NAME:
Andrea Greenberg v. Galderma Laboratories, L.P.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: RG16832179 |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [✓] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint (not specified above) (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition (not specified above) (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [✓] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties        d. [ ] Large number of witnesses
   b. [✓] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
         issues that will be time-consuming to resolve               in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence            f. [✓] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action (specify): Five
5. This case [✓] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: September 20, 2016
Howard Hirsch
_____              _____
(TYPE OR PRINT NAME)                                   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]        **CIVIL CASE COVER SHEET**        Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
                                                                    Cal. Standards of Judicial Administration, std. 3.10
                                                                    www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

1  LEXINGTON LAW GROUP
   Howard Hirsch, State Bar No. 213209
2  Abigail Blodgett, State Bar No. 278813
   503 Divisadero Street
3  San Francisco, CA 94117
   Telephone: (415) 913-7800
4  Facsimile: (415) 759-4112
   hhirsch@lexlawgroup.com
5  ablodgett@lexlawgroup.com

6  Attorneys for Plaintiff
   ANDREA GREENBERG
7

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                      COUNTY OF ALAMEDA

11

12  ANDREA GREENBERG, on behalf of herself      Case No.
    and all others similarly situated,
13
                           Plaintiff,           CLASS ACTION COMPLAINT
14
15        vs.

16  GALDERMA LABORATORIES, L.P., and
    DOES 1-100,
17
                           Defendants.
18

19

20

21

22

23

24

25

26

27

28

ENDORSED
FILED
ALAMEDA COUNTY

SEP 20 2016

CLERK OF THE SUPERIOR COURT
By _____
                    Deputy

16832759

1    Plaintiff Andrea Greenberg ("Plaintiff"), on behalf of herself and those similarly

2  situated, based on information and belief and investigation of counsel, except for information

3  based on personal knowledge, hereby alleges:

4                                    **INTRODUCTION**

5    1.    A substantial portion of the population of the United States suffers from eczema.

6  Approximately 31.6 million Americans exhibit symptoms of eczema, and at least 17.8 million

7  individuals experience moderate to severe eczema. This creates a high demand for products that

8  promise to treat or mitigate the uncomfortable itching, dryness, skin sensitivity, and rashes caused

9  by eczema.

10    2.    Defendant Galderma Laboratories, L.P. ("Galderma"), and others unknown to

11  Plaintiff at this time (collectively, "Defendants"), advertise, market, label, sell, and represent that

12  their skin care products treat or mitigate eczema. In particular, Defendants sells skin care products

13  under the brand name "Cetaphil®." These products prominently feature on the front label the

14  words "Eczema Calming," "Formulated for Eczema," or similar representations that indicate that

15  the products will treat or mitigate eczema (the "Products").[1]

16    3.    According to the Food and Drug Administration ("FDA"), there is only a single

17  ingredient for over-the-counter ("OTC") use, colloidal oatmeal, which has been shown to treat or

18  mitigate eczema. 21 C.F.R. §§ 347.10(f), 347.50(b)(4). None of the Products contain colloidal

19  oatmeal as an ingredient.[2] Thus, Defendants' Products make labeling claims that are unlawful,

20  false, and misleading.

21    4.    Plaintiff and members of the Class reasonably believed Defendants' representations

22  that the Products would treat or mitigate eczema, and would not have purchased the Products or

23  paid such a high price for the Products but for Defendants' unlawful, false and misleading

24  representations that the Products would do so.

---

25    [1] For example, Defendants' Products include, but are not limited to, Cetaphil® Eczema
   Calming Body Wash, Cetaphil® Skin Restoring Body Wash, and Cetaphil® Eczema Calming
26  Body Moisturizer.

27    [2] The FDA has also permitted eczema drug claims on OTC products that include both
   colloidal oatmeal and mineral oil as combined active ingredients. 21 C.F.R. §§ 347.20(a)(4),
28  347.50(b)(7). None of the Products contain mineral oil either.

1        5.     Plaintiff and members of the Class reasonably believe that when they purchase

2   products to treat or mitigate eczema that those products are being lawfully marketed.  Plaintiff and

3   members of the Class would not have purchased the Products had they known that the Products

4   could not be lawfully sold as OTC drugs for eczema treatment.

5        6.     Defendants' conduct of advertising, marketing, selling, labeling, and representing

6   that the Products treat or mitigate eczema, when they in fact do not include any ingredient

7   approved by the FDA for treating or mitigating eczema, constitutes unlawful, unfair, and deceptive

8   conduct, is likely to deceive members of the public, is unethical, oppressive, unscrupulous, and

9   substantially injurious to consumers, and violates California's legislatively declared policies

10  against misbranding OTC drug products and misrepresenting the characteristics of goods and

11  services.  As such, Defendants' marketing, labeling, and advertising practices violate the

12  California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (hereinafter the

13  "UCL"), the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

14  (hereinafter the "CLRA"), and the California False Advertising Law, Cal. Bus. & Prof. Code §

15  17500, *et seq.* (hereinafter the "FAL").  Accordingly, Plaintiff and members of the Class seek an

16  order enjoining Defendants' acts of unfair competition.

17                                      **PARTIES**

18       7.     Plaintiff Andrea Greenberg is a resident of California and purchased one or more of

19  the Products.  During the class period, Plaintiff purchased one of the Products at a retail store in

20  San Francisco, California.  The front label of the Products, which Plaintiff reviewed prior to

21  purchase, prominently displays the words "Eczema Calming."  At the time of purchase, Plaintiff

22  reasonably believed based on the front of the label that the Products would treat or mitigate

23  eczema and that the Products were being lawfully sold for eczema relief.  Therefore, Plaintiff

24  purchased one of the Products for her teenage son who suffers from eczema.  The Product Plaintiff

25  purchased was wholly ineffective at treating or mitigating her son's eczema.  Had Plaintiff known

26  that the Products were ineffective at treating or mitigating eczema, that the Products do not contain

27  any ingredient that has been approved by FDA for treating or mitigating eczema, and that the

28  Products could not be lawfully sold for treating or mitigating eczema, Plaintiff would not have

1   bought the Products at all, or would not have paid more for the Products than the cost of other skin

2   care products that do not claim to treat or mitigate eczema.

3        8.     Defendant Galderma Laboratories, L.P. is the United States affiliate of

4   Switzerland-based Galderma S.A.  Galderma maintains its headquarters in Fort Worth, Texas.

5   Galderma advertises, markets, distributes, and sells the Products in California.

6        9.     DOES 1 through 100 are persons or entities whose true names and capacities are

7   presently unknown to Plaintiffs, and who therefore are sued by such fictitious names.  Plaintiffs

8   are informed and believe, and on that basis allege, that each of the fictitiously named defendants

9   perpetrated some or all of the wrongful acts alleged herein and are responsible in some manner for

10   the matters alleged herein.  Plaintiffs will amend this Complaint to state the true names and

11   capacities of such fictitiously named defendants when ascertained.

12        10.     Defendant Galderma and DOES 1-100 are collectively referred to herein as

13   "Defendants."

14                             **JURISDICTION AND VENUE**

15        11.     This Court has jurisdiction over all causes of action asserted herein pursuant to the

16   California Constitution, Article VI, § 10, because this case is a cause not given by statute to other

17   trial courts.  This Court also has jurisdiction over certain causes of action asserted herein pursuant

18   to California Business & Professions Code §§ 17203 and 17204, which allow for enforcement in

19   any Court of competent jurisdiction.

20        12.     This Court has jurisdiction over Defendants because each Defendant is a

21   corporation or other entity that has sufficient minimum contacts in California, is a citizen of

22   California, or otherwise intentionally avails itself of the California market either through the

23   distribution, sale, and/or marketing of the Products in the State of California or by having a facility

24   located in California so as to render the exercise of jurisdiction over it by the California courts

25   consistent with traditional notions of fair play and substantial justice.

26        13.     Venue in the County of Alameda is proper under California Business & Professions

27   Code § 17203, California Code of Civil Procedure §§ 395 and 395.5, and California Civil Code §

28   1780, because this Court is a court of competent jurisdiction and the Products are sold throughout

1  this County.  Concurrently with filing this Complaint, Plaintiff is filing an affidavit pursuant to

2  Civil Code § 1780(d) regarding the propriety of venue in Alameda County.

3  <center>**COMMON FACTUAL ALLEGATIONS**</center>

4      14.     Seeking to profit on the extremely irritating symptoms suffered by the millions of

5  people with eczema, Defendants market the Products as treating or mitigating eczema.

6      15.     Defendants prominently represent on the principal display panels of all of the

7  Products that the Products are "Eczema Calming," "Formulated for Eczema," or other similar

8  representations that the Products will treat or mitigate eczema.  By using these representations on

9  the packaging, Defendants are representing to consumers that the Products will treat or mitigate

10 eczema and that they are superior to other products on the market that do not make this claim.  The

11 Products are thus unlawfully and deceptively marketed, in contrast to other skin care products, as

12 products that will treat or mitigate eczema, when they in fact do not contain any ingredient that has

13 been approved by FDA for treating or mitigating eczema.

14      16.     The Products are ineffective at treating or mitigating eczema.  Alternatively, to the

15 extent the Products provide any relief for eczema, they are no more effective at doing so than

16 comparable and less expensive products that also contain no ingredients approved by FDA for

17 eczema treatment and that do not make such label claims.

18      17.     Defendants bolster the impression that the Products will treat or mitigate eczema

19 with other representations in their advertising for the Products.  For instance, Defendants state in

20 their advertising that the Products:

21          a.  provide "eczema-soothing power;"

22          b.  are "formulated to soothe dry, itchy skin associated with eczema and atopic

23              dermatitis;"

24          c.  are "formulated to . . . bring soothing relief to atopic skin and symptoms associated

25              with eczema;" and

26          d.  are "[c]linically proven to . . . sooth[] the dry, itchy, skin symptoms associated with

27              eczema-prone skin."

28  Defendants also further their scheme to portray the Products as treating or mitigating eczema by

<center>-4-</center>

1   displaying the Products on their website on a page devoted to eczema.

2       18.     In 1938, Congress enacted the Federal Food, Drug, and Cosmetic Act ("FDCA"),

3   21 U.S.C. § 301, *et seq.*, after Congress "became increasingly concerned about unsafe drugs and

4   fraudulent marketing." *Wyeth v. Levine*, 555 U.S. 555, 566 (2009).  Through the FDCA, the FDA

5   regulates the marketing of OTC drug products.

6       19.     Among other things, the FDCA prohibits the sale of adulterated or misbranded

7   drugs, and requires manufacturers to apply to the FDA for premarket approval of new drugs or

8   comply with an OTC drug monograph. *See* 21 U.S.C. § 331.

9       20.     A manufacturer seeking premarket approval of a new OTC drug must submit a

10  detailed new drug application ("NDA"), which must include:

11          [E]vidence consisting of adequate and well-controlled investigations,
            including clinical investigations, by experts qualified by scientific training
12          and experience to evaluate the effectiveness of the drug involved, on the
            basis of which it could fairly and responsibly be concluded by such
13          experts that the drug will have the effect it purports or is represented to
            have under the conditions of use prescribed, recommended, or suggested
14          in the labeling or proposed labeling thereof.

15  21 U.S.C. § 355(d).  Moreover, after the FDA approves a NDA, any change in the drug's labeling

16  requires a supplement to the application and further approval by the FDA, either before or after the

17  change.  21 C.F.R. §§ 314.70(b), (c), and 314.71.

18      21.     An OTC drug manufacturer need not seek premarket approval if its marketing of

19  the OTC drug is in compliance with an OTC drug monograph.  Unlike NDAs which are based on

20  specific drug products, monographs specify the active ingredients that can be contained within a

21  class of OTC drug products.  An OTC drug product containing ingredients that comply with the

22  standards established in an applicable monograph is considered to be "generally recognized as safe

23  and effective" and does not require specific FDA approval before marketing.[3]  In drafting the

24  monographs, the FDA divided OTC drugs into drug categories, which were then assigned to an

25  advisory review panel of qualified experts who evaluate the safety and effectiveness of the OTC

26

27      [3] FDA, Regulatory Mechanisms for Marketing OTC Drug Products,
    http://www.fda.gov/AboutFDA/CentersOffices/OfficeofMedicalProductsandTobacco
28  /CDER/ucm106386.htm (last visited September 20, 2016).

1  drugs, review the drugs' labeling, and advise the FDA Commissioner on the promulgation of

2  monographs establishing conditions under which OTC drugs listed within each monograph are

3  generally recognized as safe, effective, and not misbranded. 21 C.F.R. § 330.10(a).

4      22.    An OTC drug that is not the subject of a NDA is not generally recognized as safe

5  and effective and is misbranded unless it meets each of the conditions contained in FDA's OTC

6  drug regulations and each of the conditions in an applicable monograph. *See* 21 C.F.R. § 330.1.

7      23.    The FDA has issued a final drug monograph for the category of skin protectant

8  drug products for OTC human use. *See* 21 C.F.R. Pt. 347. Through this monograph, the FDA has

9  determined that the only skin protectant products for OTC drug use that can include on their labels

10  any claims to treat or mitigate eczema are those containing colloidal oatmeal in specified

11  minimum percentages as an active ingredient. 21 C.F.R. §§ 347.10(t), 347.50(b)(4). An OTC

12  skin protectant drug product that does not include colloidal oatmeal as an active ingredient and

13  that is labeled with a claim to treat or mitigate eczema cannot be considered generally recognized

14  as safe and effective for its intended use and is deemed by the FDA to be misbranded. *See id.* §

15  347.1.

16      24.    California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law") has

17  adopted federal nonprescription drug regulations as state regulations. Cal. Health & Safety Code

18  § 110111. Thus, the final OTC drug monograph for skin protectant products is incorporated into

19  California state law. The Sherman Law declares any drug to be "misbranded" if its labeling is

20  "false or misleading in any particular." *Id.* § 111330.

21      25.    The Sherman Law also declares that it is unlawful for any person to disseminate

22  any false advertisement of any drug. *Id.* § 110390. As with misbranding, an "advertisement is

23  false if it is false or misleading in any particular." *Id.* In addition, it is unlawful to sell a new drug

24  without obtaining an approved NDA or complying with the applicable monograph. *See id.* §

25  111550.

26      26.    The therapeutic claims found on the Products cause the Products to be drugs under

27  section 321(g)(1) of the FDCA because they are intended for use in the cure, mitigation, treatment,

28  or prevention of disease, and are intended to affect the structure or any function of the human

1  body, such as skin. The Products are also drugs because consumers will perceive the eczema-

2  related label claims as an indication that the Products will treat or mitigate consumers' eczema.

3      27.     While the FDCA does not define the term, "mitigation" is generally defined as

4  "lessening the force or intensity of something unpleasant . . .," "making a condition . . . less

5  severe," or "the process of becoming milder, gentler, or less severe."[4]  By stating that the Products

6  are "Eczema Calming," "Formulated for Eczema," or other similar representations, Defendants are

7  clearly communicating to consumers that the Products will mitigate their eczema.

8      28.     None of the Products are the subject of NDAs.

9      29.     None of the Products meet each of the conditions in any applicable monograph

10  issued by FDA.

11      30.     None of the Products contain colloidal oatmeal, nor do any of them contain any

12  other ingredients that are approved by FDA for OTC human use as treating or mitigating eczema.

13      31.     Thus, Defendants' representations that their Products will treat or mitigate the

14  eczema are unlawful, false, deceptive, and misleading.

15      32.     Defendants' representations on the principal display panels of the Products mislead

16  consumers into believing the Products will treat or mitigate eczema, when they in fact do not

17  contain any ingredient that has been approved by FDA for treating or mitigating eczema and are

18  ineffective at treating or mitigating eczema.

19      33.     Defendants know that use of the words "Eczema Calming," "Formulated for

20  Eczema," or similar representations on the front label of the Products misleads consumers into

21  believing the Products will treat or mitigate eczema.

22      34.     Defendants' ongoing practice of advertising, marketing, labeling, selling, and

23  representing that the Products treat or mitigate eczema, when in fact they do not, is likely to

24  deceive ordinary consumers of the Products and has in fact deceived Plaintiff. Plaintiff reasonably

25  understood the labeling of the Products to mean that the Products will treat or mitigate eczema. In

26  reliance on Defendants' claims, Plaintiff purchased Products she would not have purchased but for

27  Defendants' false promotion of the Products as treating or mitigating eczema, or paid a premium

28  _____

   [4] www.dictionary.com (last visited September 20, 2016).

1  for the Products in comparison to similar skin care products that do not make such claims.

2      35.    Plaintiff and members of the Class have suffered injury in fact and have lost money

3  or property because they paid for the Products that they would have not otherwise purchased, or

4  paid a premium for the Products, as a direct result of Defendants' unlawful, false, misleading,

5  deceptive, and unfair representations that the Products would treat or mitigate eczema.

6      36.    Plaintiff and members of the Class purchased the Products from mainstream retail

7  outlets and reasonably believed the Products were being lawfully sold for eczema treatment.

8  Plaintiff and members of the Class would not have purchased the Products had they known that

9  the Products could not be lawfully sold as OTC drugs for eczema treatment.

10      37.    Had Plaintiff and the members of the Class known the true nature of the Products,

11  they would not have purchased them.

12      38.    If Defendants reformulated the Products to include ingredients that are approved by

13  the FDA for eczema treatment and otherwise lawfully marketed the Products, Plaintiff would

14  consider purchasing the Products again.

15      39.    Defendants know there is a high demand for relief from eczema.  In fact,

16  Defendants' own website notes that 35 million people in the United States suffer from eczema.

17  Defendants' scheme to exploit consumer demand for eczema relief by falsely advertising the

18  Products as treating or mitigating eczema has been extraordinarily successful.

19      40.    Defendants have profited enormously from its unlawful, false, and misleading

20  representations that the Products treat or mitigate eczema.  The purpose of this action is to put an

21  end to Defendants' unlawful and deceptive marketing of the Products.

22      41.    Plaintiff has engaged in good-faith efforts to resolve the claims alleged herein prior

23  to filing this Complaint.

24                                   **CLASS ALLEGATIONS**

25      42.    Pursuant to California Code of Civil Procedure § 382, Plaintiff brings this action on

26  behalf of herself and the following Class:

27             All persons who purchased any of the Products in California during the

28             applicable statute of limitations.

1    (the "Class"). The following persons and entities are specifically excluded from the Class:

2    Defendants; the officers, directors, or employees of Defendants; any entity in which any

3    Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of

4    Defendants. Also excluded are any federal, state, or local governmental entities, any judicial

5    officer presiding over this action and the members of their immediate family and judicial staff, and

6    any juror assigned to this action.

7         43.    The Class is sufficiently numerous, as it includes thousands of persons who have

8    purchased the Products. Plaintiff is unable to state the precise number of potential members of the

9    proposed Class because that information is in the possession of Defendants and their retail

10   customers. However, the number of members in the proposed Class is so numerous that joinder

11   would be impracticable. The exact size of the proposed Class and the identity of its members will

12   be readily ascertainable from the business records of Defendants and their retailers as well as

13   Class members' own records and testimony. The disposition of the claims of the Class members

14   in this class action will substantially benefit both the parties and the Court.

15        44.    There is a community of interest among members of the proposed Class in that

16   there are questions of law and fact common to the proposed Class that predominate over questions

17   affecting only individual members. Proof of a common set of facts will establish the liability of

18   Defendants and the right of each member of the Class to relief. These common legal and factual

19   questions, which do not vary among Class members and which may be determined without

20   reference to the individual circumstances of a Class member include, but are not limited to the

21   following:

22        a.   whether the Products are "drugs" under state and federal law;

23        b.   whether Defendants advertise, market, label, and sell the Products by representing

24             that the Products treat or mitigate eczema;

25        c.   whether Defendants' conduct in advertising and marketing the Products constitutes

26             a violation of the CLRA;

27        d.   whether Defendants' conduct in advertising and marketing the Products constitutes

28             a violation of the Sherman Law;

e. whether Defendants' conduct constitutes fraudulent, unfair, or unlawful conduct as defined by the UCL;

f. whether Defendants' conduct constitutes false advertisement as defined by the FAL;

g. whether Plaintiff and the Class members are entitled to injunctive and other equitable relief based on Defendants' violations of the Sherman Law, UCL, and CLRA; and

h. the appropriate remedies for Defendants' conduct.

Defendants utilize advertisements and packaging that include uniform misrepresentations that misled Plaintiffs and the other members of the Class. Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

45.     Plaintiff asserts claims that are typical of the claims of the Class. Plaintiff and all members of the Class have been subjected to the same wrongful conduct because they have purchased the Products based on Defendants' unlawful and misleading representations and omissions about the qualities of the Products. Plaintiff and the other members of the Class have all overpaid for the Products based on Defendants' unlawful and misleading representations and omissions about the qualities of the Products.

46.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has no interests that are antagonistic to those of other Class members. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent them. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

47.     Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy. Members of the Class have suffered and will suffer irreparable harm as a result of Defendants' wrongful conduct. Because of the nature of the individual Class members' claims, few, if any, could or would otherwise afford to seek legal redress against Defendants for the wrongs complained of herein. Therefore, a representative class action is appropriate, the superior

1 method of proceeding, and essential to the interests of justice insofar as the resolution of Class

2 members' claims is concerned. Absent a representative class action, members of the Class would

3 continue to suffer losses for which they would have no remedy. Even if separate actions could be

4 brought by individual members of the Class, the resulting multiplicity of lawsuits would cause

5 undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of

6 inconsistent rulings that might be dispositive of the interests of the other members of the Class

7 who are not parties to the adjudications or may substantially impede their ability to protect their

8 interests.

9 <u>**FIRST CAUSE OF ACTION**</u>

10 **(Plaintiff Greenberg, On Behalf of Herself and the Class,**
**Alleges Violations of California's Consumers Legal Remedies Act)**

11

12     48.    Plaintiff incorporates by reference the allegations set forth above.

13     49.    Plaintiff purchased the Products for personal, family or household purposes.

14 Plaintiff purchased the Products after reviewing the front label of such Products containing

15 Defendants' representations that the Products would treat or mitigate eczema.

16     50.    The acts and practices of Defendants as described above were intended to deceive

17 Plaintiff and the members of the Class as described herein, and have resulted and will result in

18 damages to Plaintiff and members of the Class. This conduct includes, but is not limited to,

19 misrepresenting that the Products will treat or mitigate eczema, even though they do not. These

20 actions violated and continue to violate the CLRA in at least the following respects:

21         a.  In violation of CLRA § 1770(a)(5), Defendants' acts and practices constitute

22             representations that the Products have characteristics, uses, or benefits which they

23             do not;

24         b.  In violation of CLRA § 1770(a)(7), Defendants' acts and practices constitute

25             representations that the Products are of a particular quality which they are not; and

26         c.  In violation of CLRA § 1770(a)(9), Defendants' acts and practices constitute the

27             advertisement of the goods in question without the intent to sell them as advertised.

28     51.    Due to Defendants' acts, Plaintiff and the Class members have suffered damages.

52.    By committing the acts alleged above, Defendants have violated the CLRA.

53.    Plaintiff and the other Class members are entitled, pursuant to California Civil Code § 1780(1)(2), to an order enjoining the above-described wrongful acts and practices of Defendants, and ordering the payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the Court under California Civil Code § 1780.

54.    Concurrently with filing this Complaint, Plaintiff filed an affidavit pursuant to Civil Code § 1780(d) regarding the propriety of venue.  Venue is proper pursuant to Civil Code § 1780(d) as a substantial portion of the transactions at issue occurred in this County.

## SECOND CAUSE OF ACTION

### (Plaintiff Greenberg, On Behalf of Herself and the Class, Alleges Violations of California's Unfair Competition Law Based On Unlawful Acts and Practices)

55.    Plaintiff incorporates by reference the allegations set forth above.

56.    The violation of any law constitutes an unlawful business practice under California Business & Professions Code § 17200.

57.    The relevant section of the Sherman Law declares any drug to be "misbranded" if it is "false or misleading in any particular." *See* Cal. Health & Safety Code §§ 111330, 110390.

58.    The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing." Cal. Health & Safety Code § 109995.

59.    Defendant Galderma is a limited partnership and, therefore, Galderma is a "person" within the meaning of the Sherman Act.

60.    The Products are drugs as they purport to treat or mitigate a specific disease - eczema.

61.    Unless it is the subject of a NDA, an OTC drug product is misbranded unless it meets each of the conditions contained in FDA's OTC drug regulations and each of the conditions in an applicable monograph.  *See* 21 C.F.R. § 330.1.

62.     Since the Products do not comply with the applicable monograph, Defendants' labeling of the Products as treating or mitigating eczema results in the Products not being generally recognized as safe and effective under federal law and constitutes misbranding. 21 C.F.R. § 347.1(a). Because the Sherman Law has adopted federal nonprescription drug regulations, California Health & Safety Code § 110111, and declares any drug to be "misbranded" if it is "false or misleading in any particular," Defendants are in violation of the Sherman Law. *See* Cal. Health & Safety Code § 111330.

63.     It is also unlawful to sell any new drug without obtaining an approved NDA or complying with the applicable monograph. Cal. Health & Safety Code § 111550(a)(1). Therefore, Defendants' sale of the Products without an approved NDA violates the Sherman Law.

64.     In addition, Defendants' conduct violates the Sherman Law's prohibition against disseminating any false advertisement of any drug because they falsely advertise each of the Products as treating or mitigating eczema, when in fact, the Products do not. Cal. Health & Safety Code § 110390.

65.     As detailed more fully in the preceding paragraphs, the acts and practices alleged herein were intended to or did result in the sale of the Products in violation of the CLRA, California Civil Code § 1750, *et seq.*, specifically California Civil Code §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9).

66.     By violating California's Sherman Law and the CLRA, Defendants have engaged in unlawful business acts and practices which constitute unfair competition within the meaning of California Business & Professions Code § 17200.

67.     Plaintiff and the other members of the Class purchased the Products after reviewing the front label of such Products containing Defendants' representations that the Products would treat or mitigate eczema. Plaintiff and the other members of the Class purchased the Products in reliance on Defendants' representations that the Products would treat or mitigate eczema. Plaintiff and the other members of the Class would not have purchased the Products at all, or would not have paid such a high price for the Products, but for Defendants' false promotion that the Products would treat or mitigate eczema. Plaintiff and the other members of the Class have thus suffered

1  injury in fact and lost money or property as a direct result of Defendants' misrepresentations and

2  material omissions.

3       68.    An action for injunctive relief is specifically authorized under California Business

4  & Professions Code § 17203.

5  <div align="center">**THIRD CAUSE OF ACTION**</div>

6  <div align="center">**(Plaintiff Greenberg, On Behalf of Herself and the Class, Alleges
Violations of California's Unfair Competition Law Based On Fraudulent Acts and Practices)**</div>

7       69.    Plaintiff incorporates by reference the allegations set forth above.

8       70.    Under California Business & Professions Code § 17200, any business act or

9  practice that is likely to deceive members of the public constitutes a fraudulent business act or

10  practice.

11       71.    Defendants have engaged and continue to engage in conduct that is likely to

12  deceive members of the public. This conduct includes, but is not limited to, misrepresenting that

13  the Products treat or mitigate eczema when, in fact, they do not. As described above, federal

14  nonprescription drug regulations, adopted in full by California's Sherman Law, provides that all

15  OTC drug labeling claims are unlawful unless they comply with an NDA or an applicable

16  monograph. Accordingly, Defendant's violations of the Sherman Law are *per se* deceptive under

17  California law.

18       72.    By committing the acts alleged above, Defendants have engaged in fraudulent

19  business acts and practices, which constitute unfair competition within the meaning of California

20  Business & Professions Code § 17200.

21       73.    Plaintiff and the other members of the Class purchased the Products after reviewing

22  the front label of such Products containing Defendants' representations that the Products would

23  treat or mitigate eczema. Plaintiff and the other members of the Class purchased the Products in

24  reliance on Defendants' representations that the Products would treat or mitigate eczema. Plaintiff

25  and the other members of the Class would not have purchased the Products at all, or would not

26  have paid such a high price for the Products, but for Defendants' false promotion that the Products

27  would treat or mitigate eczema. Plaintiff and the other members of the Class have thus suffered

28

1  injury in fact and lost money or property as a direct result of Defendants' misrepresentations and

2  material omissions.

3       74.     An action for injunctive relief is specifically authorized under California Business

4  & Professions Code § 17203.

5                              **FOURTH CAUSE OF ACTION**

6              **(Plaintiff Greenberg, On Behalf of Herself and the Class, Alleges**
   **Violations of California's Unfair Competition Law Based On Unfair Acts and Practices)**

7       75.     Plaintiff incorporates by reference the allegations set forth above.

8       76.     Under California Business & Professions Code § 17200, any business act or

9  practice that is unethical, oppressive, unscrupulous, or substantially injurious to consumers, or that

10  violates a legislatively declared policy, constitutes an unfair business act or practice.

11      77.     Defendants have engaged, and continue to engage, in conduct which is immoral,

12  unethical, oppressive, unscrupulous, or substantially injurious to consumers. This conduct

13  includes, but is not limited to, misrepresenting that the Products treat or mitigate eczema , even

14  though they do not. The gravity of harm caused by Defendants' conduct as described herein far

15  outweighs the utility, if any, of such conduct.

16      78.     Defendants have engaged, and continue to engage, in conduct that violates the

17  legislatively declared policy of the Sherman Act against misbranding and false advertising of

18  nonprescription drugs and against selling a new drug without approval. Cal. Health & Safety

19  Code §§ 111330, 110390, and 111550. Defendants have further engaged, and continue to engage,

20  in conduct that violates the legislatively declared policy of the CLRA against misrepresenting the

21  characteristics, uses, benefits, and quality of goods for sale. Defendants gain an unfair advantage

22  over their competitors, whose advertising must comply with the CLRA and California Business &

23  Professions Code § 17508.

24      79.     Defendants' conduct, including misrepresenting the benefits of the Products, is

25  substantially injurious to consumers. Such conduct has and continues to cause substantial injury

26  to consumers because consumers would not have purchased the Products at all, or would not have

27  paid such a high price for the Products, but for Defendants' false promotion of the Products as

28

1  treating or mitigating eczema. Consumers have thus overpaid for the Products. Such injury is not

2  outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to

3  consumers or competition results from Defendants' conduct. Since consumers reasonably rely on

4  Defendants' representations regarding the Products and injury results from ordinary use of the

5  Products, consumers could not have reasonably avoided such injury. *Davis v. Ford Motor Credit*

6  *Co.*, 179 Cal. App. 4th 581, 597-98 (Cal. Ct. App. 2009); *see also Drum v. San Fernando Valley*

7  *Bar Ass'n*, 182 Cal. App. 4th 247, 257 (Cal. Ct. App. 2010) (outlining the third test based on the

8  definition of "unfair" in section 5 of the Federal Trade Commission Act).

9      80.    By committing the acts alleged above, Defendants have engaged in unfair business

10  acts and practices which constitute unfair competition within the meaning of California Business

11  & Professions Code § 17200.

12      81.    Plaintiff and the other members of the Class purchased the Products after reviewing

13  the front label of such Products containing Defendants' representations that the Products would

14  treat or mitigate eczema. Plaintiff and the other members of the Class purchased the Products in

15  reliance on Defendants' representations that the Products would treat or mitigate eczema. Plaintiff

16  and the other members of the Class would not have purchased the Products at all, or would not

17  have paid such a high price for the Products, but for Defendants' false promotion that the Products

18  would treat or mitigate eczema. Plaintiff and the other members of the Class have thus suffered

19  injury in fact and lost money or property as a direct result of Defendants' misrepresentations and

20  material omissions.

21      82.    An action for injunctive relief is specifically authorized under California Business

22  & Professions Code § 17203.

23  <div align="center">**FIFTH CAUSE OF ACTION**</div>

24  <div align="center">**(Plaintiff Greenberg, On Behalf of Herself and the Class, Alleges**
**Violations of California's False Advertising Law)**</div>

25      83.    Plaintiff incorporates by reference the allegations set forth above.

26      84.    As alleged more fully above, Defendants have falsely advertised the Products by

27  falsely claiming that they treat or mitigate eczema. Defendants have made statements on the

28  principal display panels of the Products that are untrue and misleading.

85.     Defendants know, or by the exercise of reasonable care should know, that the eczema-related statements they make on their Products are unlawful, untrue and misleading.

86.     Plaintiff and the other members of the Class purchased the Products after reviewing the front label of such Products containing Defendants' representations that the Products would treat or mitigate eczema. Plaintiff and the other members of the Class purchased the Products in reliance on Defendants' representations that the Products would treat or mitigate eczema. Plaintiff and the other members of the Class would not have purchased the Products at all, or would not have paid such a high price for the Products, but for Defendants' false promotion that the Products would treat or mitigate eczema. Plaintiff and the other members of the Class have thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

87.     Defendants' violations of the FAL continue to this day.

88.     Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff and the Class seek an order of this Court that includes, but is not limited to, an order requiring Defendant to remove and/or refrain from making representations on the Products' packaging that the Products treat or mitigate eczema.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and relief on behalf of herself and the Class, against Defendant as follows:

A.     An order certifying the proposed Class, appointing Plaintiff as the representative for the Class, and appointing Plaintiff's undersigned counsel as Class counsel for the Class;

B.     An order preliminarily and permanently enjoining Defendants from conducting their business through the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

C.     An order requiring Defendants to conduct a corrective advertising and information campaign advising consumers that the Products do not have the characteristics, uses, benefits, and qualities Defendants have claimed;

D.     An order requiring Defendants to implement whatever measures are necessary to

1   remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading

2   advertising, and other violations of law described in this Complaint;

3        E.     An order requiring Defendants to notify each and every member of the Class, at

4   their own expense, of the pendency of the claims in this action in order to give such individuals

5   and businesses an opportunity to obtain relief from Defendants;

6        F.     An order awarding Plaintiff her reasonable attorneys' fees and costs of suit

7   pursuant to California Code of Civil Procedure § 1021.5, California Civil Code § 1780(d), the

8   common fund doctrine, or any other appropriate legal theory; and

9        G.     That the Court grant such other and further relief as may be just and proper.

10

11   DATED: September 20, 2016               Respectfully submitted,

12

13

14                                          Howard Hirsch, State Bar No. 213209
                                            Abigail Blodgett, State Bar No. 278813
15                                          LEXINGTON LAW GROUP
                                            503 Divisadero Street
16                                          San Francisco, CA 94117
                                            Telephone: (415) 913-7800
17                                          Facsimile: (415) 759-4112
                                            hhirsch@lexlawgroup.com
18                                          ablodgett@lexlawgroup.com

19
                                            Attorneys for Plaintiff
20                                          ANDREA GREENBERG

21

22

23

24

25

26

27

28

```
┌                              ┐    ┌                              ┐
  Lexington Law Group                 Galderma Laboratories, L.P.
  Attn: Hirsch, Howard
  503 Divisadero Street
  San Francisco, CA   94117____
└                              ┘    └                              ┘
```

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Greenberg<br><br>          Plaintiff/Petitioner(s)<br>VS.<br><br>Galderma Laboratories, L.P.<br>      Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG16831799<br><br><br>NOTICE OF HEARING |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

          Complex Determination Hearing
          Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE: 11/01/2016   TIME: 03:00 PM   DEPARTMENT: 30
LOCATION: U.S. Post Office Building, Second Floor
            201 13th Street, Oakland

Case Management Conference:
DATE: 12/06/2016   TIME: 03:00 PM   DEPARTMENT: 30
LOCATION: U.S. Post Office Building, Second Floor
            201 13th Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 30 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 268-5104. Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 30.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions. Case Management Statements may be filed by E-Delivery, by submitting directly to the E-Delivery Fax Number (510) 267-5732. No fee is charged for this service. For further information, go to **Direct Calendar Departments** at

http://apps.alameda.courts.ca.gov/domainweb.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 30.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 30 by e-mail at Dept.30@alameda.courts.ca.gov or by phone at (510) 268-5104.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated:  09/21/2016                 Chad Finke  Executive Officer / Clerk of the Superior Court

By

                                                                         Deputy Clerk

---

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 09/21/2016.

By

                                                                         Deputy Clerk